## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TRU MOBILITY, INC.,

      Plaintiff,

      v.

BRIGGS AUTO GROUP, INC.,

      Defendant.

Case No. 5:21-CV-04071-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Tru Mobility, Inc. brings this diversity action against Defendant Briggs Auto Group, Inc., alleging breach of contract. Before the Court is Defendant's Motion for Summary Judgment (Doc. 71). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants summary judgment in favor of Defendant.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3] A fact is "material" if,

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[7]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11]  To

---

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[11] *Adler*, 144 F.3d at 671.

successfully oppose summary judgment, the nonmovant must bring forward more than a mere scintilla of evidence in support of his position.[12]  A nonmovant may not create a genuine issue of material fact with unsupported, conclusory allegations."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## II.    Uncontroverted Facts

The following material facts are either uncontroverted, stipulated to,[15] or construed in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff is a Florida corporation that provides various telecommunication related services, including wire line phone, wireless phone, internet, and connectivity services. Defendant is a Kansas corporation that is independently owned and operates as a new and used motor vehicle dealership doing business as Briggs Nissan and Briggs Supercenter in Manhattan, Kansas.

### A.    Contract Negotiations

In 2016, Defendant was experiencing issues with its telecommunications system and wanted to obtain a new all-encompassing system that would include data, phone, and mobile services.  To help locate such a provider, Defendant hired a broker, Paul McDonald, who ultimately found Plaintiff and helped Defendant begin contract negotiations with Plaintiff for its services.  During these negotiations, Defendant was adamant that it wanted to limit any

---

[12] *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993).

[13] *Tapia v. City of Albuquerque,* 170 F. App'x. 529, 533 (10th Cir. 2006).

[14] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] Doc. 67.

telecommunications contract to a three-year term due to the fact that technology is constantly evolving and Defendant did not want to be stuck for a long period of time with outdated technology.  Plaintiff was aware of Defendant's desired time limitation and agreed to it.  For example, the Preliminary Quote Plaintiff submitted to Defendant provided for a 36-month term, and the Proposed Offer of Terms Defendant submitted to Plaintiff thereafter provided for the same.

**B.     Contract Terms**

On January 10, 2017, Defendant executed three contracts with Plaintiff for various telecommunication products and services: (1) Contract 20161205-A (Mobile, Shared Data, Tablet, and Record);[16] (2) Contract 20161205-B (Network and Colo);[17] and (3) Contract 20161205-C (Voice, Fax, Record, CRM Integration, Voice-Call Center-Standard, and Notes).[18] Each contract incorporated by reference the same Addendum to Contracts[19] and separate Standard Terms and Conditions.[20]  All of these documents were drafted by Plaintiff, with the exception of the Addendum to Contracts, which was drafted by Defendant's broker, McDonald. Each of the contracts are governed by Florida law.

**1.     Parties to the Contracts**

The contracts list only Defendant as the "Customer," and Defendant was the only entity (aside from Plaintiff) to sign the contracts—no other entity related to Defendant was a signatory to the contracts or was listed as a "Customer" thereunder.  However, Plaintiff understood that

---

[16] Doc. 73-6.

[17] Doc. 73-7.

[18] Doc. 73-8.

[19] Doc. 73-9.

[20] Doc. 73-10.

multiple other entities[21] were owned by Defendant and that Defendant had agreed to be responsible for all services provided by Plaintiff, regardless of the entity that ultimately used the services.

The Addendum to Contracts makes several references to various store locations. For example, it provides that Plaintiff "will provide [Defendant] with individual store billings; each containing all charges billed to that location."[22] Moreover, attached to the Addendum to Contracts is a Dealership Structure Diagram, which describes and shows the dealership structure and locations.[23]

### 2.     Duration of the Contracts

Although the contracts were not signed by both parties until January 11, 2017, the contracts state that the agreements were made on December 30, 2016. As such, the parties understood that the year the contracts were made was 2016. Each contract provides for a term of 36 months, and that the term will automatically renew unless Defendant provides Plaintiff with at least 90 days written notice prior to the end of the then-current term.

The Addendum to Contracts states that "[Plaintiff] will agree that after the 36 month original contract term [Defendant's] contract, as stated in this addendum, will become month to month and subject to current pricing at that time."[24] It also provides, in relevant part, that "[a]ny

---

[21] These entities include: Briggs Buick GMC Manhattan, Briggs Bikes, Briggs Subaru of Lawrence, Briggs Chrysler Dodge Jeep Ram of Lawrence, Briggs Nissan of Lawrence, D.E.L. Motors, Briggs Dodge, Briggs Kia, Briggs Subaru of Topeka, Briggs Toyota Fort Scott, Briggs Ford of Fort Scott, Briggs Chrysler Dodge Jeep Ram of Fort Scott, and Briggs Buick GMC Fort Scott. *See* Doc. 77-7.

[22] Doc. 73-9 at 3.

[23] *Id*. at 5.

[24] *Id*. at 2.

new or future executed contracts will terminate on the same date as the original contracts as referred to in this addendum."[25]

The Standard Terms and Conditions define the "commencement date" of the contracts as "the first day of the first bill cycle in which [Plaintiff] bills monthly recurring charges or usage charges. Unless defined otherwise in the Agreement, the Term begins on the Commencement Date."[26] The Addendum of Contracts states that "[u]pon contract execution, equipment and first month charges are due and payable to [Plaintiff]. No additional invoices will be submitted until the services at each location is up and live. Invoices will be issued as each location is activated."[27] "Term" is defined under the Standard Terms and Conditions as referring to the contract term defined in the contracts—36 months—and is stated to "automatically renew for a period of one (1) year unless [Defendant] provides [Plaintiff] with not less than ninety (90) days written notice prior to the end of the then current Term."[28] The "Effective Date" is defined as "the date of the Agreement"—December 30, 2016.[29]

### C.     Contract Termination

As noted above, Defendant was obligated to provide at least 90 days written notice prior to the end of the contracts' term that it wanted to terminate the contracts, or they would automatically renew. Therefore, on September 10, 2019, Defendant sent a Notice of Cancellation to Plaintiff, indicating that Defendant believed that each contract was to expire on December 29, 2019.

---

[25] *Id.*

[26] Doc. 73-10 at 1.

[27] Doc. 73-9 at 3.

[28] Doc. 73-10 at 1.

[29] *Id.*

### D.      Damages

Plaintiff seeks damages in the amount of $398,485 against Defendant.[30]  Plaintiff

calculates these damages as follows: Defendant agreed to expend $1,149,120 within the 36-

month term (divided between the three contracts), of which Defendant has paid $750,635,

leaving a balance of $398,485.[31]

## III.      Analysis

Defendant moves for summary judgment on Plaintiff's only claim in this case for breach

of contract.  The contracts include a choice-of-law provision stating that Florida law applies.

Under Florida law, Plaintiff must "plead and establish: (1) the existence of a contract; (2) a

material breach of that contract; and (3) damages resulting from the breach."[32]  The parties here

do not dispute the existence of the contracts between them.  Rather, Defendant moves for

summary judgment on the basis that Plaintiff cannot prove (1) that Defendant materially

breached the contracts, and (2) damages resulting from such a breach.  The Court addresses each

basis in turn.

### A.      Material Breach

#### 1.      Parties' Positions

Plaintiff alleges in the Pretrial Order that Defendant breached the three contracts by

failing to pay the early termination fees that it owes Plaintiff for terminating the contracts prior to

the end of the agreed-upon 36-month term.  In Plaintiff's view, the date on which the 36-month

term started to run is not on either date proffered by Defendant—December 30, 2016 (the date

---

[30] *See* Doc. 67 at 4; Doc. 77-8.

[31] Doc. 67 at 4.

[32] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th Dist. Ct. App. 2008)).

provided in the contracts) or January 10, 2017 (the date Defendant executed the contracts)—rather, it is the dates on which each individual service began.  Because it was not until June 2018 that all of the contracted-for services commenced, Plaintiff argues that the 36-month term could not have concluded for all services in December 2019 or January 2020 as Defendant alleges; instead, the 36-month terms would stagger by the date on which each individual service began running.  Notably, Plaintiff does not point to any contract provision or other evidence that would support this position.

Defendant, on the other hand, asserts that the beginning date of the 36-month term is either December 30, 2016, the date referenced in each contract as the date upon which the agreements were entered, or January 10, 2017, the date on which Defendant executed the contracts.  In support of its position on the latter date, Defendant points to several contract provisions.  First, Defendant points to the definition of "Commencement Date" in the Standard Terms and Conditions, which defines it as: "the first day of the first bill cycle in which [Plaintiff] bills monthly recurring charges or usage charges.  Unless defined otherwise in the Agreement, the Term begins on the Commencement Date."[33]

Then, Defendant points to a provision in the Addendum to Contracts, which provides that "[u]pon contract execution, equipment and first month charges are due and payable to [Plaintiff]."[34]  Therefore, Defendant argues, because the first month charges were due on January 10, 2017 (the date the contracts were executed), that is the "Commencement Date," and the 36-month term runs from then.  Based on Defendant's calculations, the contracts would expire either

---

[33] Doc. 73-10 at 1.

[34] Doc. 73-9 at 3.

on December 29, 2019 or on January 9, 2020, unless Defendant provided written notice of termination at least 90 days prior to either date.

In sum, Plaintiff is adamant that Defendant is contractually obligated to pay for 36-months' worth of charges for Plaintiff's services, regardless of when that 36-month term began or ended. Defendant is likewise adamant that it is only contractually obligated to pay charges for Plaintiff's services in the 36-month span between December 2016 and December 2019 (or January 2017 and January 2020), which it has already paid. Essentially, the dispute comes down to one of contract interpretation. Therefore, before determining whether Defendant breached the contracts, the Court must determine the proper interpretation of such terms.[35]

### 2.   Contract Interpretation

"Under Florida law, '[c]ontract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract.'"[36] After review of the plain language, if the terms are found to be clear and unambiguous, "a court must interpret the contract in accordance with its plain meaning . . . so as to give effect to the contract as a whole."[37] If, however, the terms are found to be ambiguous, the question before the court turns from one of law to one of fact, "precluding summary disposition."[38] As explained more fully below, the Court finds that the

---

[35] *Gulf Power Co. v. Coalsales II, LLC*, 522 F. App'x 699, 703 (11th Cir. 2013) ("Under Florida law, '[t]he interpretation of a contract is generally a question of law for the court.'" (alteration in original) (quoting *Barone v. Rogers*, 930 So. 2d 761, 764 (Fla. Dist. Ct. App. 2006))).

[36] *Caracol TV S.A. v. Telemundo TV Studios*, No. 21-10515, 2022 WL 202546, at *3 (11th Cir. Jan. 24, 2022) (alteration in original) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. Dist. Ct. App. 2009) (per curiam)).

[37] *Angelli v. Lennox Miami Corp.*, No. 20-22800, 2022 WL 426614, at *3 (S.D. Fla. Feb. 11, 2022) (first quoting *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) and then quoting *Disa v. Ashley Furniture Indus., Inc.*, 131 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015)).

[38] *Gulf Power Co.*, 522 F. App'x at 703 (quoting *Barone*, 930 So. 2d at 764).

contractual terms at issue here are unambiguous and, therefore, will continue to the next step of determining the proper interpretation of such terms.

### a.    Ambiguity of Contract Terms at Issue

To determine whether the contract terms at issue are ambiguous, "the words should be given their natural, ordinary meaning," and "where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions."[39] "And while a contract is ambiguous if it 'is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract,' a party's interpretation of the contract that is unreasonable in light of the contract's plain language does not make the contract ambiguous."[40]

In the Court's view, the only provisions that are even arguably ambiguous are those relating to the start date of the 36-month term.  However, after review of the plain language of these provisions, the Court finds them to be unambiguous.  First, the Standard Terms and Conditions, which is incorporated by reference in each contract, plainly provides that unless defined otherwise in the contract, the contract's "Term begins on the Commencement Date."[41] Second, the "Commencement Date" is similarly clearly defined therein as "the first day of the first bill cycle in which [Plaintiff] bills monthly recurring charges or usage charges."[42]  Finally, the Addendum to Contracts, which is also incorporated by reference in each contract, plainly

---

[39] *Key*, 90 F.3d at 1549.

[40] *Caracol TV S.A.*, 2022 WL 202546, at *3 (quoting *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008)).

[41] Doc. 73-10 at 1.

[42] *Id.*

states that the first month charges "are due and payable to [Plaintiff]" upon contract execution, which was on January 10, 2017.[43]

Taken in turn, the Court finds the clear and unambiguous meaning of these provisions to be: (1) the contracts' terms began on the "Commencement Date"; (2) the "Commencement Date" is the first day that Plaintiff billed Defendant; and (3) Plaintiff's first bill to Defendant was on the day the contracts were executed.  None of these terms are ambiguous or even subject to divergent interpretations.  Indeed, while Plaintiff disagrees with Defendant's position that the 36-month term began on either December 30, 2016 or January 10, 2017, Plaintiff does not make any specific arguments about these particular contract provisions such that they would be rendered ambiguous.  Moreover, Plaintiff does not point to a single contractual provision that would conflict with these provisions in support its position that the 36-month term began on the date on which each individual service was activated.  Therefore, the Court is satisfied that the contractual terms at issue regarding the duration of the contracts are unambiguous, and the Court will turn next to the proper interpretation of such terms.

**b.    Proper Interpretation of Contract Terms at Issue**

Finding that the contract terms at issue are unambiguous, the Court must now interpret the terms according to their plain meaning and in such a way that gives effect to the contract as a whole.  Based on the plain meaning of the terms as set forth above, it is clear to the Court that the intention of both parties was for the contracts to run for a 36-month term from either December 30, 2016 or January 10, 2017—but not from the date of activation of each individual service.  Therefore, the Court agrees with Defendant's interpretation that the contracts were set to expire by their terms in either December 2019 or January 2020.

---

[43] Doc. 73-9 at 3.

### 3.     Breach

Because the Court has found that the contracts were set to expire by their terms in either December 2019 or January 2020, the Court finds that Defendant followed proper protocol under the contracts by providing written notice of termination to Plaintiff at least 90-days prior to either of those dates.  In other words, even construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant did not terminate the contracts early and, therefore, did not breach the contracts by failing to pay the early termination fees Plaintiff demanded.  As there is no genuine issue of material fact regarding Defendant's breach (or lack thereof), the Court grants Defendant's motion for summary judgment on this basis.

### B.     Damages

The Court need not reach the issue of damages as to Defendant because, as stated above, Plaintiff is unable to prove that Defendant materially breached the contract.  In any event, because Defendant has already paid Plaintiff for the services provided to it through January 2020, and the contracts expired by their terms at the latest on January 9, 2020, Plaintiff has no damages against Defendant.  No entity aside from Defendant is before the Court in this case.  For these reasons, the Court grants Defendant's motion for summary judgment on this basis as well.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 71) is **granted**.

**IT IS SO ORDERED.**

Dated: April 17, 2023

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE